JUDGE SCHOFIELD

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GEL PROPERTIES, LLC | **15 CV 1217** |
| Plaintiff, | Civil Action No.: |
| v. | **COMPLAINT** |
| ONE WORLD HOLDINGS, INC. | |
| Defendant. | |

RECEIVED
FEB 19 2015
U.S.D.C. S.D. N.Y.

Plaintiff, GEL Properties, LLC ("Plaintiff" or "GEP"), by and through its undersigned attorneys, Garson, Ségal Steinmetz, Fladgate LLP, brings its Complaint against Defendant One World Holdings, Inc. ("Defendant" or "OWOO") and respectfully alleges as follows:

## THE PARTIES

1.      Plaintiff GEL PROPERTIES, LLC is a limited liability company duly organized under the laws of the State of Delaware having a principal place of business located at 16192 Coastal Hwy, Lewes, DE 19958.

2.      Upon information and belief, Defendant ONE WORLD HOLDINGS, INC. is a corporation organized and existing under the laws of the State of Nevada, having principal a place of business located at 14515 Briarhills Parkway, Houston, Texas 77077. ONE WORLD HOLDINGS, INC. is traded publicly on the Pink Over The Counter Markets, or Pink Sheets, under the symbol "OWOO". Plaintiff is further informed and believes, and upon that basis alleges that Defendant's status with the Nevada Division of Corporations is currently in default.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) in that the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.     Venue is proper in this District pursuant to 27 U.S.C. §1391(a), in that it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property which is subject of this action is situated and it is the exclusive District which the parties agreed that the claims hereafter set forth can be brought.

## FACTS COMMON TO ALL CLAIMS

### The Note

5.     On or about October 23, 2013, OWOO issued a $50,000 Convertible Redeemable Note to GEP (the "Note").  A true and correct copy of the Note is attached hereto as **Exhibit A**.

6.     The Note states that GEP is entitled, at its option, any time after the requisite Rule 144 holding period, and after full cash payment for the shares convertible thereunder, to convert all or any amount of the principal face amount of the Note then outstanding into shares of the OWOO's Common Stock (the "Common Stock") without restrictive legend of any nature.  Thus, §4(a) of the Note provides, in pertinent part:

> The Holder of this Note is entitled, at its option, at any time after the requisite rule 144 holding period, and after full cash payment for the shares convertible hereunder, to convert all or any amount of the principal face amount of this Note then outstanding into shares of the Company's common stock (the "Common Stock") without restrictive

legend of any nature, at a conversion price ("Conversion Price") for each share of Common Stock…

7.      As the Note dictates, the price at which the Note was convertible (the "Conversion Price") was to be determined for each share of Common Stock equal to 60% of the lowest closing bid price of the Common Stock as reported on the National Quotations Bureau OTCQB exchange which OWOO's shares are traded or any exchange upon which the Common Stock may be traded in the future, for any five trading days including the day upon which a Notice of Conversion is received.

8.      The mechanics of converting the Note required GEP to submit a Notice of Conversion.  Accordingly §3 of the Note provides, in pertinent part:

> Any Holder of this Note electing to exercise the right of conversion set forth in Section 4(a) hereof, in addition to the requirements set forth in Section 4(a), and any prospective transferee of this Note, also is required to the give the Company written confirmation that this Note is being converted ("Notice of Conversion") in the form annexed hereto as Exhibit A.  The date of receipt (including receipt by telecopy) of such Notice of Conversion shall be the Conversion Date.

9.      To GEP, the conversion feature of the Note was essential.  GEP was unwilling to lend money to OWOO simply to earn an interest rate return on a note.  OWOO was and is an exceedingly risky credit and GEP was making an uncertain investment.[1]  GEP was only willing to purchase the Note if it could earn GEP a return commensurate with the risk.  GEP would not have purchased the Note without the conversion clause.  GEP's ability to obtain stock at a discount to the market price pursuant to the conversion clause of the Note provided GEP with an opportunity to earn a return commensurate with the risk.  Any failure by OWOO to

---

[1] OWOO acknowledges this risk itself.  In it's Form 10-K filing with the SEC, OWOO notes that its, "business is subject to numerous risks and uncertainties….If any of the…risks actually occur, our business and financial results could be

honor Conversion Notices, therefore, would deprive GEP of the essential benefit for which it negotiated, and for which it purchased, the Note.

### First Conversion Executed Without Incident

10.     On or about April 24, 2014, GEP duly submitted a Notice of Conversion to OWOO for a portion of the Note.  Specifically, fifteen thousand dollars ($15,000) of the Note were converted into 694,444 shares of OWOO Common Stock. A true and correct copy of that Notice of Conversion is attached hereto as **Exhibit B**.

11.     OWOO honored this April 24, 2014 conversion and delivered the requested shares of Common Stock to GEP.  In connection with this conversion, OWOO also duly delivered to its transfer agent a corporate resolution authorizing the stock issuance and a legal opinion enabling the transfer agent to issue the stock without legend or other restrictions, in accordance with its contractual obligation to do so, because those shares could be sold without registration pursuant to SEC Rule 144.

### OWOO Inexplicably Refuses To Respond To Requests For Second Conversion

12.     On or about October 23, 2014, GEP duly submitted a Notice of Conversion to OWOO for a portion of the Note. Specifically, five thousand dollars ($5,000) of the remaining principal on the Note were to be converted to 2,315,815 shares of OWOO Common Stock.[2]  A true and correct copy of that Notice of Conversion is attached hereto as **Exhibit C**.

---

[2] The Bid Close Price on October 16, 2014 was 0.0036. As such, the applicable conversion price on October 23, 2014 was $0.00216 = 2,315,815 shares.

13.     Without excuse or justification, OWOO refused to deliver to GEP the shares of Common Stock that OWOO was obligated to deliver pursuant to such a Notice of Conversion.

14.     On or about November 11, 2014, Default Notice was sent via email to OWOO CEO, Corinda Joanne Melton, which stated, in pertinent part:

> On October 23rd we sent in a conversion notice to you and your transfer agent.  The shares have not been issued.  Please note the conversion is now in default and there is a $500 a day penalty [being incurred as of] October 28th.  Please have the shares issued ASAP to take the note out of default…

A true and correct copy of the November 11, 2014 Default Notice email is attached hereto as **Exhibit D**.

15.     Despite this notice, OWOO has continuously and patently failed to take the necessary steps to remedy its default.

## OWOO's Default & Financial Insolvency

16.     Pursuant to §8 of the Note, which details the "Events of Default", §8(k) states that an Event of Default shall occur if:

> The Company shall not deliver to the Holder the Common Stock pursuant to paragraph 4 herein without restrictive legend within 3 business days of its receipt of a Notice of Conversion.

17.     Further, §8 of the Note states that if one or more of the Events of Default shall occur:

> Then, or at any time thereafter, unless cured, and in each and every such case, unless such Event of Default shall have been in writing by

the Holder (which waiver shall not be deemed to be a waiver of any subsequent default) at the option of the Holder and in the Holder's sole discretion, the Holder may consider this Note immediately due and payable, without presentment, demand, protest or (further) notice of any kind (other than notice of acceleration), all of which are hereby expressly waived, anything herein or in any note or other instruments contained to the contrary notwithstanding, the Holder may immediately, and without expiration of any period of grace, enforce any and all of the Holder's rights and remedies provided herein or any other rights or remedies afforded by law.  Upon an Event of Default, interest shall be accrued at a default interest rate of 24% per annum… In the event of a breach of 8(k) the penalty shall be $250 per day the shares are not issued beginning on the 4th day after the conversion notice was delivered to the company.  The penalty shall increase to $500 per day beginning on the 10th day.

18.     At no point has GEP ever, whether formally or informally, in writing or orally, waived OWOO's defaults.

19.     Due to OWOO's persistent and willful failure to remedy its breach, as of filing the instant action, default payments owed to GEP by OWOO under the terms of the Note have risen to over $40,000, exclusive of interest, and continue to escalate daily.

20.     The Note, at §9, dictates that:

In case any provision of this Note is held by a court of competent jurisdiction to be excessive in scope or otherwise invalid or unenforceable, such provisions shall be adjusted rather than voided, if possible, so that it is enforceable to the maximum extent possible, and the validity and enforceability of the remaining provisions of this Note will not in any way be affected or impaired thereby.

Accordingly, should the Court find that the penalties for default under §8 of the Note were unreasonable at the time of drafting, these damages should be amended rather than nullified in their entirety.

21.     Given that at the time of execution, it was inconceivable to consider that OWOO would, under any circumstances, have failed to fulfill its obligations under the Note for a period of ten days, let alone close to four months, these default payments were reasonable when drafted.

22.     On or about December 23, 2014, OWOO sent GEP an email stating that due to its difficult financial condition, OWOO would seek to resolve the matter with GEP by paying out a *paltry* 14.3% of the outstanding principal balances due to GEP in return for an agreement that such payment would fully satisfy OWOO's obligations and nullify the conditions and covenants of the Note.  A true and correct copy of the December 23, 2014 email is attached hereto as **Exhibit E**.

23.     The 14.3% figure proposed by OWOO not only failed to consider default payments owed to GEP under the terms of the Note, but by seeking to ameliorate OWOO's positioning and obligations under the Note, it also illustrated OWOO's utter disregard for the sanctity of the bargain duly struck between the corporation and its creditor/investor.

24.     Further, the December 23, 2014 email from OWOO served to trigger another of several Events of Default, namely §8(d)(2) of the Note, which states that default will occur if OWOO shall "admit in writing its inability to pay its debts generally as they mature."

25.     In purchasing the Note, GEP purposefully negotiated for conversion rights as a means of protection from the very scenario which it now finds itself.

26.     In addition to OWOO's breach of §8(k) and §8(d)(2) of the Note, other "Events of Default" have also occurred; namely:

a.  OWOO is in breach of §8(b), which dictates that, "[a]ny of the
    representations or warranties made by the Company herein or in any
    certificate or financial or other written statement heretofore or
    hereafter furnished on behalf of the Company in connection with the
    execution and delivery of this Note shall be false or misleading in any
    respect…"  §12 of the Note required that the company was to reserve
    104,000,000 shares of Common Stock for conversion under the Note,
    and that such reserve was to be replenished as needed to allow for
    conversion of the Note.  By failing to abide by this provision, OWOO
    triggered an additional independent Event of Default.

b.  OWOO is in breach of §8(c), which states that an Event of Default shall
    occur if the, "Company shall failed to perform or observe, in any
    respect, any covenant, term, provision, condition, agreement or
    obligation of the Company under this Note." By failing to effectuate
    GEP's October 23, 2014 Notice of Conversion, as required under the
    Note, OWOO triggered an additional independent Event of Default.

c.  OWOO is in breach of §8(g), which states in pertinent part, that an
    Event of Default shall occur if, "[o]ne or more money judgments, writs
    or warrants of attachment, or similar process, in excess of twenty five
    thousand dollars ($25,000) in the aggregate, shall be entered or filed
    against the Company or any of its properties or other assents and shall
    remain unpaid, unvacated, unbounded or unstayed for a period of
    fifteen (15) days or in any event later than five (5) days prior to the
    date of any proposed sale thereunder…"  This Event of Default was
    triggered upon the filing of a Summary Judgment in Lieu of Complaint
    by Darling Capital, LLC against OWOO on or about November 2014.
    A true and correct copy of the Darling Capital, LLC Summary
    Judgment in Lieu of Complaint is attached hereto as **Exhibit F**.

27.     Upon information and belief, in it's Quarterly Report submitted to the United States Securities and Exchange Commission, Form 10-Q (Commission File No. 001-13869) for the Quarterly Period Ended September 30, 2014 ("Form 10-Q"), OWOO states in Note 2 that:

> The Company has incurred operating losses since inception, only recently began sales of its dolls, and has limited financial resources and a working capital deficit of $5,382,955 at September 30, 2014. These factors raise substantial doubt about the Company's ability to continue as a going concern. The Company's condensed consolidated financial statements have been prepared on a going concern basis, which contemplates the realization of assets and the satisfaction of liabilities in the normal course of business.  In addition, the Company had an accumulated deficit of $15,974,571 and a total stockholders' deficit of $5,338,802 at September 30, 2014.

A true and correct copy of OWOO's Form 10-Q is attached hereto as **Exhibit G**.

28.     Note 15 of Form 10-Q also suggests that, despite its unwillingness to comply with GEP's duly submitted Notice of Conversion, OWOO increased its convertible debentures and incurred additional indebtedness totaling $68,000, consisting of convertible debentures totaling $50,000 and stockholder advances of $18,000.

29.     Also according to Form 10-Q, OWOO is currently carrying $1,191,953 in Convertible debentures.

30.     Despite OWOO's willful resistance to convert the Note of GEP as required, the company *did* permit other persons and entities to acquire significant quantities of Common Stock during the *exact* time period.  A true and correct copy of OWOO's Form-4 filed with the SEC on November 4, 2014 is attached hereto as **Exhibit H**.

31.     According to OWOO's Form-4, filed with the SEC on November 4, 2014, beginning on October 23, 2014 (the very date GEP submitted its Notice of Conversion), and ending on October 29, 2014, OWOO allowed for one Donna Harvey's to acquire 5,981, 630 shares of OWOO Common Stock.[3]

32.     With regards to the commencement of an action or proceeding to enforce any provision of the Note, §8(k) dictates, in pertinent part:

> If the Holder shall commence an action or proceeding to enforce any provisions of this Note, including without limitation engaging an attorney, then Holder shall be reimbursed by the Company for its attorneys' fees and other costs and expenses incurred in the investigation, preparation and prosecution of such action or proceeding.

33.     The shares, if delivered by OWOO, were and are eligible to be sold publicly without legend or restriction pursuant to applicable SEC rules and regulations.

### FIRST CLAIM FOR RELIEF
(FAILURE TO DELIVER SHARES: PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF)

34.     GEP realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 33 of this Complaint as if fully set forth herein.

35.     Pursuant to the agreements between them, OWOO is obligated to deliver 2,315,815 shares of its Common Stock, along with all necessary corporate

---

[3] On October 23, 2014, Donna Harvey beneficially owned 9,854,167 shares of OWOO Common Stock.  By October 29, 2014, Ms. Harvey's beneficial ownership of OWOO Common Stock had risen to 15,835,767 shares.

resolutions and legal opinions necessary to enable GEP to sell such shares publicly without restriction.

36.     Despite its obligation to do so, OWOO has failed and refused to deliver said shares of stock to GEP.

37.     As a result of such refusal by OWOO, GEP has suffered damages.

38.     GEP has no adequate remedy at law.

39.     In the absence of injunctive relief, GEP will suffer irreparable harm.

40.     GEP requests, therefore, that the Court enter an order, preliminarily and permanently, requiring OWOO to deliver immediately to GEP 2,315,815 shares of its Common Stock, along with all necessary corporate resolutions and legal opinions necessary to enable GEP to sell such shares publicly without restriction.

## SECOND CLAIM FOR RELIEF
### (FAILURE TO DELIVER SHARES: DAMAGES)

41.     GEP realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42.     GEP, therefore, is entitled to an award of damages in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
### (ANTICIPATORY BREACH OF CONTRACT: PRELIMINARY & PERMANENT INJUNCTION)

43.     GEP realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 42 of this Complaint as if fully set forth herein.

44.     OWOO's failure to deliver shares of stock and otherwise comply with its obligations upon GEP's partial conversion of the Note constitutes an anticipatory breach by OWOO of its obligation to convert the remainder of the Note into shares of Common Stock.

45.     As a result of such anticipatory breach by OWOO, GEP has been damaged.

46.     GEP has no adequate remedy at law.

47.     GEP therefore requests that the Court enter an order, preliminarily and permanently, directing OWOO to honor, in accordance with the agreements between the parties, all conversion requests hereafter duly submitted by GEP to convert all or any portion of the Note into shares of OWOO Common Stock, and directing OWOO to deliver all necessary corporate resolutions and legal opinions necessary to enable GEP to sell such shares publicly without restriction.


### FOURTH CLAIM FOR RELIEF
(ANTICIPATORY BREACH OF CONTRACT: DAMAGES)

48.     GEP realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49.     GEP is therefore entitled to an award of damages in an amount to be determined at trial, but not less than seventy-five thousand and five hundred dollars ($75,500).

## FIFTH CLAIM FOR RELIEF
### (CONVERSION: PRELIMINARY & PERMANENT INJUNCTION)

50.     GEP realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51.     GEP has a right to possession of the shares which OWOO has refused to deliver, which right is greater than OWOO's right to possess those shares.

52.     OWOO has wrongfully interfered with GEP's right to possess those shares, which interference constituted conversion of those shares by OWOO.

53.     As a result of OWOO's wrongful conversion of the shares, GEP has been damaged.

54.     GEP has no adequate remedy at law.

55.     GEP requests, therefore, that the Court enter an order, preliminarily and permanently, requiring OWOO to deliver immediately to GEP 2,315,815 shares of its Common Stock, along with the all necessary corporate resolutions and legal opinions necessary to enable GEP to sell such shares publicly without restriction.

## SIXTH CLAIM FOR RELIEF
### (CONVERSION: DAMAGES)

56.     GEP realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57.     GEP, therefore, is entitled to an award of damages in an amount to be determined at trial, but not less than seventy-five thousand and five hundred dollars ($75,500).

## SEVENTH CLAIM FOR RELIEF
### (COSTS, EXPENSES & ATTORNEYS' FEES)

58.     GEP realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59.     In accordance with §7 of the agreement between the parties, OWOO agreed to pay all costs and expenses, including reasonable attorneys' fees and expenses, incurred by GEP in collecting any amount under the Note.

60.     The Note further states, at §8(k), that, if GEP shall commence an action or proceeding to enforce any provisions of the Note, including without limitation, engaging an attorney, then GEP shall be reimbursed by OWOO for all its attorneys' fees and other costs and expenses incurred in the investigation, preparation and prosecution of such action or proceeding.

61.     Therefore, GEP is entitled to an award against OWOO for costs and expenses incurred in the prosecution of this lawsuit, including reasonable legal fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff GEL PROPERTIES, LLC seeks judgment against Defendant ONE WORLD HOLDINGS, INC. as follows:

i.       On the First and Fifth Claims for Relief, GEP requests an order, preliminarily and permanently, requiring OWOO to deliver 2,315,815 shares of its Common Stock, along with the all necessary corporate resolutions and legal opinions necessary to enable GEP to sell such shares publicly without restriction; and

ii.       On the Second, Fourth, and Sixth Claims for Relief, for damages in an amount to be determined at trial, but not less than seventy-five thousand and five hundred dollars ($75,500); and

iii.       On the Third Claim for Relief for an order, preliminarily and permanently, directing OWOO to honor, in accordance with the agreements between the parties, all conversion requests hereafter duly submitted by GEP to convert all or any portion of the Note into shares of OWOO Common Stock, and directing OWOO to deliver all necessary corporate resolutions and legal opinions necessary to enable GEP to sell such shares publicly without restriction; and

iv.       On the Seventh Claim for Relief for an award of GEP's costs and expenses in prosecuting this action, including reasonable legal fees; and

v.       On all Claims for Relief, for interest, attorneys' fees and the costs and disbursements of this action; and

vi.       For such other further relief as the Court may deem just, proper, and in the interest of justice.

DATED:       NEW YORK, NEW YORK
            FEBRUARY ___, 2015

                            RESPECTFULLY SUBMITTED,
                            **GARSON, SEGAL,**

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) in that the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.      Venue is proper in this District pursuant to 27 U.S.C. §1391(a), in that it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property which is subject of this action is situated and it is the exclusive District which the parties agreed that the claims hereafter set forth can be brought.

## FACTS COMMON TO ALL CLAIMS

### The Note

5.      On or about October 23, 2013, OWOO issued a $50,000 Convertible Redeemable Note to GEP (the "Note").  A true and correct copy of the Note is attached hereto as **Exhibit A**.

6.      The Note states that GEP is entitled, at its option, any time after the requisite Rule 144 holding period, and after full cash payment for the shares convertible thereunder, to convert all or any amount of the principal face amount of the Note then outstanding into shares of the OWOO's Common Stock (the "Common Stock") without restrictive legend of any nature.  Thus, §4(a) of the Note provides, in pertinent part:

> The Holder of this Note is entitled, at its option, at any time after the requisite rule 144 holding period, and after full cash payment for the shares convertible hereunder, to convert all or any amount of the principal face amount of this Note then outstanding into shares of the Company's common stock (the "Common Stock") without restrictive

legend of any nature, at a conversion price ("Conversion Price") for each share of Common Stock…

7.      As the Note dictates, the price at which the Note was convertible (the "Conversion Price") was to be determined for each share of Common Stock equal to 60% of the lowest closing bid price of the Common Stock as reported on the National Quotations Bureau OTCQB exchange which OWOO's shares are traded or any exchange upon which the Common Stock may be traded in the future, for any five trading days including the day upon which a Notice of Conversion is received.

8.      The mechanics of converting the Note required GEP to submit a Notice of Conversion.  Accordingly §3 of the Note provides, in pertinent part:

> Any Holder of this Note electing to exercise the right of conversion set forth in Section 4(a) hereof, in addition to the requirements set forth in Section 4(a), and any prospective transferee of this Note, also is required to the give the Company written confirmation that this Note is being converted ("Notice of Conversion") in the form annexed hereto as Exhibit A.  The date of receipt (including receipt by telecopy) of such Notice of Conversion shall be the Conversion Date.

9.      To GEP, the conversion feature of the Note was essential.  GEP was unwilling to lend money to OWOO simply to earn an interest rate return on a note. OWOO was and is an exceedingly risky credit and GEP was making an uncertain investment.[1]  GEP was only willing to purchase the Note if it could earn GEP a return commensurate with the risk.  GEP would not have purchased the Note without the conversion clause.  GEP's ability to obtain stock at a discount to the market price pursuant to the conversion clause of the Note provided GEP with an opportunity to earn a return commensurate with the risk.  Any failure by OWOO to

---

[1] OWOO acknowledges this risk itself.  In it's Form 10-K filing with the SEC, OWOO notes that its, "business is subject to numerous risks and uncertainties….If any of the…risks actually occur, our business and financial results could be

honor Conversion Notices, therefore, would deprive GEP of the essential benefit for which it negotiated, and for which it purchased, the Note.

## First Conversion Executed Without Incident

10.     On or about April 24, 2014, GEP duly submitted a Notice of Conversion to OWOO for a portion of the Note.  Specifically, fifteen thousand dollars ($15,000) of the Note were converted into 694,444 shares of OWOO Common Stock. A true and correct copy of that Notice of Conversion is attached hereto as **Exhibit B**.

11.     OWOO honored this April 24, 2014 conversion and delivered the requested shares of Common Stock to GEP.  In connection with this conversion, OWOO also duly delivered to its transfer agent a corporate resolution authorizing the stock issuance and a legal opinion enabling the transfer agent to issue the stock without legend or other restrictions, in accordance with its contractual obligation to do so, because those shares could be sold without registration pursuant to SEC Rule 144.

## OWOO Inexplicably Refuses To Respond To Requests For Second Conversion

12.     On or about October 23, 2014, GEP duly submitted a Notice of Conversion to OWOO for a portion of the Note. Specifically, five thousand dollars ($5,000) of the remaining principal on the Note were to be converted to 2,315,815 shares of OWOO Common Stock.[2]  A true and correct copy of that Notice of Conversion is attached hereto as **Exhibit C**.

---

[2] The Bid Close Price on October 16, 2014 was 0.0036. As such, the applicable conversion price on October 23, 2014 was $0.00216 = 2,315,815 shares.

4

13.     Without excuse or justification, OWOO refused to deliver to GEP the shares of Common Stock that OWOO was obligated to deliver pursuant to such a Notice of Conversion.

14.     On or about November 11, 2014, Default Notice was sent via email to OWOO CEO, Corinda Joanne Melton, which stated, in pertinent part:

> On October 23rd we sent in a conversion notice to you and your transfer agent.  The shares have not been issued.  Please note the conversion is now in default and there is a $500 a day penalty [being incurred as of] October 28th.  Please have the shares issued ASAP to take the note out of default...

A true and correct copy of the November 11, 2014 Default Notice email is attached hereto as **Exhibit D**.

15.     Despite this notice, OWOO has continuously and patently failed to take the necessary steps to remedy its default.

## OWOO's Default & Financial Insolvency

16.     Pursuant to §8 of the Note, which details the "Events of Default", §8(k) states that an Event of Default shall occur if:

> The Company shall not deliver to the Holder the Common Stock pursuant to paragraph 4 herein without restrictive legend within 3 business days of its receipt of a Notice of Conversion.

17.     Further, §8 of the Note states that if one or more of the Events of Default shall occur:

> Then, or at any time thereafter, unless cured, and in each and every such case, unless such Event of Default shall have been in writing by

5

the Holder (which waiver shall not be deemed to be a waiver of any subsequent default) at the option of the Holder and in the Holder's sole discretion, the Holder may consider this Note immediately due and payable, without presentment, demand, protest or (further) notice of any kind (other than notice of acceleration), all of which are hereby expressly waived, anything herein or in any note or other instruments contained to the contrary notwithstanding, the Holder may immediately, and without expiration of any period of grace, enforce any and all of the Holder's rights and remedies provided herein or any other rights or remedies afforded by law.  Upon an Event of Default, interest shall be accrued at a default interest rate of 24% per annum… In the event of a breach of 8(k) the penalty shall be $250 per day the shares are not issued beginning on the 4th day after the conversion notice was delivered to the company.  The penalty shall increase to $500 per day beginning on the 10th day.

18.     At no point has GEP ever, whether formally or informally, in writing or orally, waived OWOO's defaults.

19.     Due to OWOO's persistent and willful failure to remedy its breach, as of filing the instant action, default payments owed to GEP by OWOO under the terms of the Note have risen to over $40,000, exclusive of interest, and continue to escalate daily.

20.     The Note, at §9, dictates that:

In case any provision of this Note is held by a court of competent jurisdiction to be excessive in scope or otherwise invalid or unenforceable, such provisions shall be adjusted rather than voided, if possible, so that it is enforceable to the maximum extent possible, and the validity and enforceability of the remaining provisions of this Note will not in any way be affected or impaired thereby.

Accordingly, should the Court find that the penalties for default under §8 of the Note were unreasonable at the time of drafting, these damages should be amended rather than nullified in their entirety.

6

21.     Given that at the time of execution, it was inconceivable to consider that OWOO would, under any circumstances, have failed to fulfill its obligations under the Note for a period of ten days, let alone close to four months, these default payments were reasonable when drafted.

22.     On or about December 23, 2014, OWOO sent GEP an email stating that due to its difficult financial condition, OWOO would seek to resolve the matter with GEP by paying out a *paltry* 14.3% of the outstanding principal balances due to GEP in return for an agreement that such payment would fully satisfy OWOO's obligations and nullify the conditions and covenants of the Note.  A true and correct copy of the December 23, 2014 email is attached hereto as **Exhibit E**.

23.     The 14.3% figure proposed by OWOO not only failed to consider default payments owed to GEP under the terms of the Note, but by seeking to ameliorate OWOO's positioning and obligations under the Note, it also illustrated OWOO's utter disregard for the sanctity of the bargain duly struck between the corporation and its creditor/investor.

24.     Further, the December 23, 2014 email from OWOO served to trigger another of several Events of Default, namely §8(d)(2) of the Note, which states that default will occur if OWOO shall "admit in writing its inability to pay its debts generally as they mature."

25.     In purchasing the Note, GEP purposefully negotiated for conversion rights as a means of protection from the very scenario which it now finds itself.

26.     In addition to OWOO's breach of §8(k) and §8(d)(2) of the Note, other "Events of Default" have also occurred; namely:

a.  OWOO is in breach of §8(b), which dictates that, "[a]ny of the representations or warranties made by the Company herein or in any certificate or financial or other written statement heretofore or hereafter furnished on behalf of the Company in connection with the execution and delivery of this Note shall be false or misleading in any respect…"  §12 of the Note required that the company was to reserve 104,000,000 shares of Common Stock for conversion under the Note, and that such reserve was to be replenished as needed to allow for conversion of the Note.  By failing to abide by this provision, OWOO triggered an additional independent Event of Default.

b.  OWOO is in breach of §8(c), which states that an Event of Default shall occur if the, "Company shall failed to perform or observe, in any respect, any covenant, term, provision, condition, agreement or obligation of the Company under this Note." By failing to effectuate GEP's October 23, 2014 Notice of Conversion, as required under the Note, OWOO triggered an additional independent Event of Default.

c.  OWOO is in breach of §8(g), which states in pertinent part, that an Event of Default shall occur if, "[o]ne or more money judgments, writs or warrants of attachment, or similar process, in excess of twenty five thousand dollars ($25,000) in the aggregate, shall be entered or filed against the Company or any of its properties or other assents and shall remain unpaid, unvacated, unbounded or unstayed for a period of fifteen (15) days or in any event later than five (5) days prior to the date of any proposed sale thereunder…"  This Event of Default was triggered upon the filing of a Summary Judgment in Lieu of Complaint by Darling Capital, LLC against OWOO on or about November 2014.  A true and correct copy of the Darling Capital, LLC Summary Judgment in Lieu of Complaint is attached hereto as **Exhibit F**.

27.     Upon information and belief, in it's Quarterly Report submitted to the United States Securities and Exchange Commission, Form 10-Q (Commission File No. 001-13869) for the Quarterly Period Ended September 30, 2014 ("Form 10-Q"), OWOO states in Note 2 that:

> The Company has incurred operating losses since inception, only recently began sales of its dolls, and has limited financial resources and a working capital deficit of $5,382,955 at September 30, 2014. These factors raise substantial doubt about the Company's ability to continue as a going concern. The Company's condensed consolidated financial statements have been prepared on a going concern basis, which contemplates the realization of assets and the satisfaction of liabilities in the normal course of business.  In addition, the Company had an accumulated deficit of $15,974,571 and a total stockholders' deficit of $5,338,802 at September 30, 2014.

A true and correct copy of OWOO's Form 10-Q is attached hereto as **Exhibit G**.

28.     Note 15 of Form 10-Q also suggests that, despite its unwillingness to comply with GEP's duly submitted Notice of Conversion, OWOO increased its convertible debentures and incurred additional indebtedness totaling $68,000, consisting of convertible debentures totaling $50,000 and stockholder advances of $18,000.

29.     Also according to Form 10-Q, OWOO is currently carrying $1,191,953 in Convertible debentures.

30.     Despite OWOO's willful resistance to convert the Note of GEP as required, the company *did* permit other persons and entities to acquire significant quantities of Common Stock during the *exact* time period.  A true and correct copy of OWOO's Form-4 filed with the SEC on November 4, 2014 is attached hereto as **Exhibit H**.

31.    According to OWOO's Form-4, filed with the SEC on November 4, 2014, beginning on October 23, 2014 (the very date GEP submitted its Notice of Conversion), and ending on October 29, 2014, OWOO allowed for one Donna Harvey's to acquire 5,981, 630 shares of OWOO Common Stock.[3]

32.    With regards to the commencement of an action or proceeding to enforce any provision of the Note, §8(k) dictates, in pertinent part:

> If the Holder shall commence an action or proceeding to enforce any provisions of this Note, including without limitation engaging an attorney, then Holder shall be reimbursed by the Company for its attorneys' fees and other costs and expenses incurred in the investigation, preparation and prosecution of such action or proceeding.

33.    The shares, if delivered by OWOO, were and are eligible to be sold publicly without legend or restriction pursuant to applicable SEC rules and regulations.

## FIRST CLAIM FOR RELIEF
### (FAILURE TO DELIVER SHARES: PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF)

34.    GEP realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 33 of this Complaint as if fully set forth herein.

35.    Pursuant to the agreements between them, OWOO is obligated to deliver 2,315,815 shares of its Common Stock, along with all necessary corporate

---

[3] On October 23, 2014, Donna Harvey beneficially owned 9,854,167 shares of OWOO Common Stock.  By October 29, 2014, Ms. Harvey's beneficial ownership of OWOO Common Stock had risen to 15,835,767 shares.

resolutions and legal opinions necessary to enable GEP to sell such shares publicly without restriction.

36.     Despite its obligation to do so, OWOO has failed and refused to deliver said shares of stock to GEP.

37.     As a result of such refusal by OWOO, GEP has suffered damages.

38.     GEP has no adequate remedy at law.

39.     In the absence of injunctive relief, GEP will suffer irreparable harm.

40.     GEP requests, therefore, that the Court enter an order, preliminarily and permanently, requiring OWOO to deliver immediately to GEP 2,315,815 shares of its Common Stock, along with all necessary corporate resolutions and legal opinions necessary to enable GEP to sell such shares publicly without restriction.

## SECOND CLAIM FOR RELIEF
### (FAILURE TO DELIVER SHARES: DAMAGES)

41.     GEP realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42.     GEP, therefore, is entitled to an award of damages in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
### (ANTICIPATORY BREACH OF CONTRACT: PRELIMINARY & PERMANENT INJUNCTION)

43.     GEP realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 42 of this Complaint as if fully set forth herein.

44.     OWOO's failure to deliver shares of stock and otherwise comply with its obligations upon GEP's partial conversion of the Note constitutes an anticipatory breach by OWOO of its obligation to convert the remainder of the Note into shares of Common Stock.

45.     As a result of such anticipatory breach by OWOO, GEP has been damaged.

46.     GEP has no adequate remedy at law.

47.     GEP therefore requests that the Court enter an order, preliminarily and permanently, directing OWOO to honor, in accordance with the agreements between the parties, all conversion requests hereafter duly submitted by GEP to convert all or any portion of the Note into shares of OWOO Common Stock, and directing OWOO to deliver all necessary corporate resolutions and legal opinions necessary to enable GEP to sell such shares publicly without restriction.


### FOURTH CLAIM FOR RELIEF
(ANTICIPATORY BREACH OF CONTRACT: DAMAGES)

48.     GEP realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49.     GEP is therefore entitled to an award of damages in an amount to be determined at trial, but not less than seventy-five thousand and five hundred dollars ($75,500).

## FIFTH CLAIM FOR RELIEF
### (CONVERSION: PRELIMINARY & PERMANENT INJUNCTION)

50.     GEP realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51.     GEP has a right to possession of the shares which OWOO has refused to deliver, which right is greater than OWOO's right to possess those shares.

52.     OWOO has wrongfully interfered with GEP's right to possess those shares, which interference constituted conversion of those shares by OWOO.

53.     As a result of OWOO's wrongful conversion of the shares, GEP has been damaged.

54.     GEP has no adequate remedy at law.

55.     GEP requests, therefore, that the Court enter an order, preliminarily and permanently, requiring OWOO to deliver immediately to GEP 2,315,815 shares of its Common Stock, along with the all necessary corporate resolutions and legal opinions necessary to enable GEP to sell such shares publicly without restriction.

## SIXTH CLAIM FOR RELIEF
### (CONVERSION: DAMAGES)

56.     GEP realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57.     GEP, therefore, is entitled to an award of damages in an amount to be determined at trial, but not less than seventy-five thousand and five hundred dollars ($75,500).

## SEVENTH CLAIM FOR RELIEF
### (COSTS, EXPENSES & ATTORNEYS' FEES)

58.     GEP realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59.     In accordance with §7 of the agreement between the parties, OWOO agreed to pay all costs and expenses, including reasonable attorneys' fees and expenses, incurred by GEP in collecting any amount under the Note.

60.     The Note further states, at §8(k), that, if GEP shall commence an action or proceeding to enforce any provisions of the Note, including without limitation, engaging an attorney, then GEP shall be reimbursed by OWOO for all its attorneys' fees and other costs and expenses incurred in the investigation, preparation and prosecution of such action or proceeding.

61.     Therefore, GEP is entitled to an award against OWOO for costs and expenses incurred in the prosecution of this lawsuit, including reasonable legal fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff GEL PROPERTIES, LLC seeks judgment against Defendant ONE WORLD HOLDINGS, INC. as follows:

    i.      On the First and Fifth Claims for Relief, GEP requests an order, preliminarily and permanently, requiring OWOO to deliver 2,315,815 shares of its Common Stock, along with the all necessary corporate resolutions and legal opinions necessary to enable GEP to sell such shares publicly without restriction; and

    ii.      On the Second, Fourth, and Sixth Claims for Relief, for damages in an amount to be determined at trial, but not less than seventy-five thousand and five hundred dollars ($75,500); and

    iii.      On the Third Claim for Relief for an order, preliminarily and permanently, directing OWOO to honor, in accordance with the agreements between the parties, all conversion requests hereafter duly submitted by GEP to convert all or any portion of the Note into shares of OWOO Common Stock, and directing OWOO to deliver all necessary corporate resolutions and legal opinions necessary to enable GEP to sell such shares publicly without restriction; and

    iv.      On the Seventh Claim for Relief for an award of GEP's costs and expenses in prosecuting this action, including reasonable legal fees; and

    v.      On all Claims for Relief, for interest, attorneys' fees and the costs and disbursements of this action; and

    vi.      For such other further relief as the Court may deem just, proper, and in the interest of justice.

DATED:      NEW YORK, NEW YORK
             FEBRUARY ___, 2015

                          RESPECTFULLY SUBMITTED,
                          **GARSON, SEGAL,**

STEINMETZ, FLADGATE LLP
*ATTORNEYS FOR PLAINTIFF*

BY:

MICHAEL STEINMETZ
164 WEST 25TH STREET
SUITE 11R
NEW YORK, NY 10001
TELEPHONE: (212) 380-3623
FACSIMILE: (347) 537-4540
EMAIL: MS@GS2LAW.COM